UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARIO CAVIN,

           Plaintiff,                                   Case No. 1:11-cv-1370

v.                                                  Honorable Gordon J. Quist

DANIEL HEYNS et al.,

           Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's access to the courts claims against Defendants Walton and Hardiman for failure to state a claim. The Court also will dismiss Plaintiff's claims against Defendant Heyns arising from his visitation restriction. The Court will serve Plaintiff's surviving Eighth Amendment and Equal Protection claims against Defendants Heyns and Anderson.

## Discussion

I.        Factual allegations

Plaintiff, who refers to himself as "an Ens Legis/Transmitting Utility" states that he is "filing this complaint in [sic] behalf of his Authorized Representative, Mario Sentelle Cavin, a

sui juris Sovereign American National" who currently is incarcerated in the Brooks Correctional

Facility (LRF).  He sues LRF Assistant Deputy Warden Sherri Walton, LRF Head Librarian Elisia

Hardiman, LRF Special Activities Director Dorinda Anderson and Michigan Department of

Corrections (MDOC) Director Daniel Heyns.

In his *pro se* complaint, Plaintiff claims that he submitted over twenty pages of legal

documents to Defendant Hardiman for copying on October 19, 2011.  Plaintiff allegedly needed the

copies for exhibits to a legal pleading that he intended to file challenging his unlawful conviction.

On October 27, Defendants Hardiman and Walton informed Plaintiff that they were confiscating the

documents he submitted for copying because they were prohibited UCC materials.  Plaintiff

contends that the documents did not constitute a threat to the good order of the facility and that

Defendants Hardiman and Walton's conduct denied his right of access to the courts.  Plaintiff further

contends that he "has been caused irreparable harm due to not being able to file his pleadings

appropriately.  Should Plaintiff attempt to file his pleadings without the exhibits to support his

claims, he will be virtually ensuring defeat." (Compl., ¶ 16, Page ID#4.)

Plaintiff's next claim concerns the denial of indigent status.  Under MDOC Policy

Directive 04.02.120(B)(4) (eff. Jan. 1, 2007), a prisoner is not eligible for indigent status if he was

terminated from employment for being found guilty of a misconduct within the past twelve months.

Plaintiff was fired from his job in March 2011 as the result of a misconduct.  Defendant Anderson

subsequently denied Plaintiff's request for indigent status under the policy on August 15, 2011.

Plaintiff contends that without indigent funds, he is being denied all forms of hygiene items other

than a 1-inch bar of soap.  He alleges that he has no toothbrush, toothpaste, deodorant, shampoo or

shower shoes.  Plaintiff further claims that he is unable to purchase allergy medication at the prison

store.  He suffers from severe allergies, that when go untreated, can exacerbate his asthma.

According to Plaintiff, these allergy medications no longer are provided by health care and he has

no other way to obtain them.  Plaintiff also claims that he is unable to communicate with his family

and friends because he is under a visitation restriction, and he cannot afford to purchase writing materials and postage or to make telephone calls.  Plaintiff contends that by denying him indigent status under PD 04.02.120(B)(4), Defendants Heyns and Anderson are violating his Eighth Amendment right against cruel and unusual punishment.

For his third claim, Plaintiff alleges that under MDOC policy, male prisoners are denied the same level of personal privacy as female prisoners in violation of the Fourteenth Amendment Equal Protection Clause.  For example, Plaintiff contends that only female guards may pat down female prisoners, except in the case of an emergency, while male prisoners may be patted-down by male or female guards in all cases.  In addition, male officers must announce their presence before making rounds in a female housing unit, while female officers are not required to make any such announcement before making rounds in a male housing unit.  As a result, female officers routinely view male prisoners engaging in necessary bodily functions in their cells.

Finally, Plaintiff claims that Defendant Heyns violated his First Amendment right to peaceable assembly, his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights by permanently restricting his visits pursuant to MDOC Policy Directive 05.03.140 (eff. Oct. 1, 2007).  Under the policy, the Director of the MDOC may restrict permanently all visits for a prisoner who is found guilty of two or more violations of the major misconduct charge of substance abuse, e.g. possession of narcotics, alcohol, unauthorized prescription drugs, or drug paraphernalia, or for failure to submit to a drug test.  *Id.* at ¶ XX(4).  According to the substance abuse regulation, prisoners whose visits have been permanently restricted nevertheless may receive visits from attorneys and qualified clergy.  *Id.* at ¶ AAA.  Inmates may also request that the visitation ban be lifted after six months or two years, depending on the underlying infractions.  *Id.* at ¶ BBB.  Plaintiff has a 2009 substance abuse misconduct for being in possession of his prescribed medication and a 2011 conviction for possession of "spud juice" (prison alcohol).  Because one of Plaintiff's substance abuse convictions was for something

other than alcohol, he is not eligible for reinstatement until two years after the restriction was imposed in 2011. *Id.* After the two-year period expires, Plaintiff may make a written request to the warden for removal of the restriction. *Id.* at ¶ DDD. The warden then will make a recommendation to the Deputy Director of the MDOC, who in turn will make a recommendation to the Director. *Id.* at ¶ CCC. Reinstatement of visitation privileges is within the Director's discretion. *Id.*

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.       **Access to the Court**

Plaintiff contends that Defendants Walton and Hardiman violated his right of access to the courts by seizing the UCC materials that he submitted for copying. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials

have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*,

518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff claims that he intended to submit the seized documents as exhibits to a

pleading intended to attack his unlawful conviction. He asserts that he "has been caused irreparable

harm due to not being able to file his pleadings appropriately. Should Plaintiff attempt to file his

pleadings without the exhibits to support his claims, he will be virtually ensuring defeat." (Compl.,

¶ 16, Page ID#4.) While Plaintiff anticipates that his pleading will not be accepted by the court

without the supporting UCC materials, he does not allege that he attempted to file the pleading or

that it actually was rejected by the court. Plaintiff, therefore, fails to allege or show that he suffered

"actual" injury to pending or contemplated litigation. Moreover, the documents Plaintiff intended

to file likely were frivolous. In 2000, Plaintiff was convicted in the Lake County Circuit Court of

two counts of second-degree murder, two counts of possessing a firearm during the commission of

a felony and one count of being a felon in possession of a firearm. The Court cannot fathom how

UCC-related materials could be relevant to Plaintiff's state criminal conviction. Accordingly, he

fails to state an access to the courts claim against Defendants Hardiman and Walton. Because

Plaintiff does not bring any other claims against Defendants Hardiman and Walton, they will be

dismissed from this action.

B.     **Indigent Status**

Plaintiff contends that by denying him indigent status under PD 04.02.120(B)(4),

Defendants Heyns and Anderson are violating his Eighth Amendment right against cruel and

unusual punishment. Specifically, Plaintiff alleges that without indigent funds, he is being denied

basic hygiene supplies, including a toothbrush and toothpaste; he cannot obtain allergy medication;

and he is unable to communicate in any manner with his family and friends. At this stage of the

proceedings, the Court finds that Plaintiff's allegations are sufficient to warrant service of Plaintiff's Eighth Amendment claim against Defendants Heyns and Anderson.

### C.        Personal Privacy Protections

Plaintiff alleges that under MDOC policy, male prisoners are denied the same level of personal privacy as female prisoners in violation of the Fourteenth Amendment Equal Protection Clause.  For purposes of initial review, the Court finds that Plaintiff's allegations are sufficient to warrant service of his equal protection claim against Defendant Heyns.

### D.        Permanent Visitation Restriction

Finally, Plaintiff claims that Defendant Heyns violated his First Amendment right to peaceable assembly, his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights by permanently restricting his visits pursuant to Policy Directive 05.03.140(XX)(4).  The United States Supreme Court addressed a challenge to the same MDOC policy in *Overton v. Bazzetta*, 539 U.S. 126 (2003).  The Court ruled that the regulations did not facially infringe on the prisoners' First Amendment rights of intimate association or violate their Fourteenth Amendment substantive due process rights. *Id.* at 131-36.  In so holding, the Court stated that it was not implying that "any right to intimate association is altogether terminated by incarceration" but it noted that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* at 131-32; *see also id.* at 134 ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.").  The Court also held

that the withdrawal of visitation privileges did not "fall below the standards mandated by the Eighth Amendment." *Id.* at 137.

The *Overton* Court did not grant certiorari on the issue of whether the regulations violated the prisoners' procedural due process rights under the Fourteenth Amendment.  In the context of its Eighth Amendment discussion, however, the Court noted that the "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline . . . is not a dramatic departure from accepted standards for conditions of confinement. *Cf. Sandin v. Conner*, 515 U.S. 472, 485 (1995)." *Overton*, 539 U.S. at 137.  The Court opined that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.*  It concluded, however, that "[a]n individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards . . .would not support [a] ruling . . . that the entire regulation is invalid." *Id.*

The Sixth Circuit, sitting *en banc*, subsequently addressed the procedural due process issue in *Bazzetta v. McGinnis*,  430 F.3d 795 (6th Cir. 2006).  Relying on the Supreme Court's dictum in *Overton* and its previous holding in *Sandin*, the Sixth Circuit held that the policy was not a dramatic departure or an atypical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest.  *Bazzetta*, 430 F.3d at 802-03. Consequently, the *Bazzetta* court found that the policy did not rise to the level of a due process violation, despite the inmates' contention that the policy was a *de facto* permanent ban on all visitation for certain inmates. *Bazzetta*. *Id*.  The court further held that the policy did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause." *Id.* at 805.

In light of the foregoing authority, Plaintiff's First Amendment, Eighth Amendment and Fourteenth Amendment due process challenges to the loss his of visitation privileges under PD 05.03.140 fail to state a claim upon which relief may be granted.  After two years, Plaintiff may seek reinstatement of his visitation privileges as set forth in the policy.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's access to the courts claims against Defendants Walton and Hardiman will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will dismiss Plaintiff's claim against Defendant Heyns arising from his visitation restriction for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's surviving Eighth Amendment and Equal Protection claims against Defendants Heyns and Anderson.

An Order consistent with this Opinion will be entered.


Dated:  February 2, 2012                                        /s/ Gordon J. Quist
                                                                       GORDON J. QUIST
                                                                       UNITED STATES DISTRICT JUDGE