UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO SENTELLE CAVIN, LLC,

       Plaintiff,                            Hon. Gordon J. Quist

v.                                                  Case No. 1:11-CV-1370

DANIEL HEYNS, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Heyns and Anderson's Motion for Summary Judgment</u>. (Dkt. #22). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The complaint indicates that this matter is initiated by "Mario Sentelle Cavin©, a sui juris Sovereign American National, who is currently being detained within the Brooks Correctional Facility (LRF)," on behalf of purported Plaintiff Mario Sentelle Cavin, LLC. (Dkt. #1). Generally, a layperson is prohibited from representing a Limited Liability Company (LLC). It is clear, however, that the real party in interest (i.e., the true plaintiff) is Mario Cavin and that Mario Sentelle Cavin, LLC is merely a nom de plume the purpose of which is not entirely clear. Accordingly, despite the reference in the complaint to Mario Sentelle Cavin, LLC, the Court interprets this action as being initiated solely by Mario Cavin, the individual, solely on behalf of Mario Cavin, the individual. Thus, any and all

references herein to "Plaintiff" refer to Mario Cavin, the individual, only. The following allegations are contained in Plaintiff's complaint.

In March 2011, Plaintiff was fired from his prison job "due to a misconduct." In July or August 2011, Plaintiff requested to be placed on "indigent status" "due to not having any hygiene materials, and no foreseeable income in the near future." Plaintiff's request was denied by Defendant Anderson on the ground that, pursuant to Michigan Department of Corrections (MDOC) policy, Plaintiff was ineligible to be placed on indigent status because he was terminated from his job because of misconduct. Plaintiff asserts that Defendants Anderson and Heyns, by denying his request for indigent status, violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff further asserts that the policy on which Anderson relied to deny his request is unconstitutional.

On October 19, 2011, Plaintiff submitted to Defendant Hardiman "over 20-pages of legal exhibits" which he "needed copied for an upcoming pleading." On October 27, 2011, Defendants Hardiman and Walton confiscated Plaintiff's legal materials "due to it containing 'UCC related materials.'" Defendants confiscated the material in question without first conducting a hearing. Plaintiff asserts that Defendants violated his First Amendment right of access to the courts.

Plaintiff next asserts that the MDOC "has a policy and custom of providing female prisoners with additional privacy protections that male prisoners are not provided." Specifically, Plaintiff laments that male corrections officers are not permitted to "pat-down" female inmates, while male inmates are subject to "pat-down" searches by both male or female officers. With respect to this disparity, Plaintiff complains that "if Plaintiff becomes aroused during a pat-down by a female officer, he is subject to potential disciplinary action." Plaintiff also complains that while male officers are required to "announce their presence" before entering a female housing unit, female officers are not

subject to a similar requirement when entering a male housing unit. Finally, Plaintiff complains that because he is not allowed to "cover his cell windows," female officers "are routinely allowed to watch Plaintiff performing bodily functions in his cell." Plaintiff asserts that this circumstance violates his right to equal protection under the law. Plaintiff next alleges that his ability to receive visitors has been "permanently" restricted in violation of his right to due process and his right to be free from cruel and unusual punishment.

Plaintiff initiated the present action seeking declaratory, injunctive, and monetary relief. Many of Plaintiff's claims were subsequently dismissed. (Dkt. #5). The only claims remaining in this matter are Plaintiff's claims against Defendants Heyns and Anderson that denial of his request to be placed in indigent status violated his Eighth Amendment rights and Plaintiff's Equal Protection claim against Defendant Heyns concerning the allegation that male prisoners are denied the same level of personal privacy as female prisoners. Defendants Heyns and Anderson now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not

change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter*

*v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state

court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of eight different grievances that Plaintiff filed. (Dkt. #23, Exhibit 4). Plaintiff has not asserted or presented evidence that he filed any additional grievances. Of the eight grievances in question, only one (LRF 11-08-01386-01I) concerns the claims remaining in this action. As discussed below, this particular grievance serves to exhaust Plaintiff's Eighth Amendment claim against Defendant Anderson, but not his Eighth Amendment claim against Defendant Heyns. Furthermore, while Plaintiff does not appear to have filed a grievance concerning his Equal

Protection claim, for the reasons discussed below the Court concludes that Defendant Heyns has not satisfied his burden to establish that Plaintiff has not properly exhausted this claim.

        A.      Eighth Amendment Claims

Plaintiff filed grievance LRF 11-08-01386-01I on August 17, 2011, alleging that on August 15, 2011, Defendant Anderson denied his request to be placed on indigent status. (Dkt. #23, Exhibit 4). Defendant Anderson concedes that Plaintiff pursued this grievance through all three steps of the grievance process, but nevertheless asserts that Plaintiff's efforts to exhaust this particular claim were insufficient. Specifically, Defendant Anderson argues that because Plaintiff initiated the present action prior to receiving a response to his Step III grievance appeal, Plaintiff has not properly exhausted his claim against her. The Court disagrees.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III is to "be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Plaintiff filed his Step I grievance on August 17, 2011. Plaintiff's Step I grievance was denied after which Plaintiff appealed the matter to Step II. Plaintiff's Step II appeal was denied after which Plaintiff appealed the matter to Step III. Plaintiff's Step III grievance was denied on January 11, 2012. As Defendant notes, Plaintiff initiated the present action, on December 23, 2011, after submitting his Step III grievance appeal, but before receiving a response thereto. As Defendant further observes, where an inmate files a civil action in the federal courts before completing the available administrative processes, his complaint must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"). Thus, Defendants argue that Plaintiff's Eighth Amendment claims must be dismissed for failure to

properly exhaust administrative remedies. Defendant's argument, however overlooks the fact that prison officials did not timely respond to Plaintiff's Step III grievance.

Prison officials did not respond to Plaintiff's Step III grievance until January 11, 2012, 150 days after Plaintiff submitted his Step I grievance. As noted above, MDOC Policy provides that the grievance process is to be completed within 120 calendar days unless an extension of time has been approved. There is no evidence that an extension of time was granted to respond to Plaintiff's grievance. The Sixth Circuit has held that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004). This rule is necessary because otherwise prison officials could defeat every prisoner civil rights action by simply refusing to respond to a prisoner's Step III grievance. When the prisoner eventually initiated legal action, prison officials could then respond to the Step III grievance and move to dismiss the prisoner's civil rights action on the ground that such was initiated before the grievance process was completed.

Plaintiff pursued this matter through all three steps of the grievance process and did not initiate the present action until 131 days had passed after submitting his Step I grievance. The Court concludes, therefore, that Plaintiff has properly exhausted his claim that Defendant Anderson, on August 15, 2011, denied his request to be placed on indigent status. With respect to Defendant Heyns, however, the Court reaches a different conclusion. The grievance in question is not asserted against Defendant Heyns and, in fact, makes no mention of Heyns. As noted above, MDOC policy requires prisoners to identify in each grievance the names of the individual(s) against whom the grievance is asserted. Plaintiff's failure to name Defendant Heyns in his grievance is fatal.

In sum, for the reasons articulated above, the undersigned recommends that with respect to Plaintiff's Eighth Amendment claims, Defendant Anderson's motion for summary judgment be **denied** and Defendant Heyns' motion for summary judgment be **granted**.

B.   Equal Protection Claim

Defendant Heyns moves for relief as to Plaintiff's Equal Protection claim on the ground that Plaintiff failed to grieve this particular claim through all three steps of the prison grievance process. Plaintiff concedes that he never filed a grievance regarding this claim. As Plaintiff observes, however, pursuant to MDOC policy regarding prisoner grievances prisoners are not permitted to file grievances concerning "the content of policy or procedure except as it was specifically applied to the grievant." *See* Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) ¶ F(1). As Plaintiff is challenging the existence of an alleged policy as opposed to its application to him (i.e., Plaintiff is asserting a facial rather than an as-applied challenge), this limitation appears to apply to Plaintiff's claim. Pursuant to this particular policy, if a prisoner "has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum." *Id.*

In response to Defendant Heyns' motion, Plaintiff has submitted an affidavit in which he asserts that he presented to the Warden's Forum his concerns that prison officials were employing a policy by which male and female prisoners were afforded different levels of privacy. (Dkt. #26). Plaintiff asserts that the Warden's Forum "failed to acknowledge" his concern, after which he "filed a Petition for Declaratory Ruling pursuant to Administrative Rule 791.1115" which was denied by the Office of Legal Affairs. *Id.* Defendant Heyns does not dispute Plaintiff's assertions or evidence.

Plaintiff can hardly be faulted for failing to submit a grievance regarding a claim that, pursuant to MDOC policy, is not subject to the prison grievance process. As noted above, the Supreme Court has held that "[c]ompliance with prison grievance procedures. . .is all that is required by the PLRA to 'properly exhaust'" a claim. Plaintiff has submitted evidence that he did precisely what MDOC policy required him to do and Defendant Heyns has submitted no evidence to the contrary. The Court concludes, therefore, that Defendant has failed to carry his burden of demonstrating that Plaintiff has failed to properly exhaust his Equal Protection claim. Accordingly, with respect to Plaintiff's Equal Protection claim against Defendant Heyns, the undersigned recommends that Defendant's motion be **denied**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants Heyns and Anderson's Motion for Summary Judgment, (dkt. #22), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's Eighth Amendment claim against Defendant Heyns be dismissed for failure to exhaust administrative remedies, but that Plaintiff's Eighth Amendment claim against Defendant Anderson and Plaintiff's Equal Protection claim against Defendant Heyns go forward. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  Respectfully submitted,

Date:  July 30, 2012                               /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge