MARIO SENTELLE CAVIN, LLC,

              Plaintiff,                               Hon. Gordon J. Quist

v.                                                 Case No. 1:11-CV-1370

DANIEL HEYNS, et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on <u>Defendant Heyns' and Anderson's Motion for Summary Judgment</u>. (Dkt. #53). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

      The complaint indicates that this matter is initiated by "Mario Sentelle Cavin©, a sui juris Sovereign American National, who is currently being detained within the Brooks Correctional Facility (LRF)," on behalf of purported Plaintiff Mario Sentelle Cavin, LLC. (Dkt. #1). Generally, a layperson is prohibited from representing a Limited Liability Company (LLC). It is clear, however, that the real party in interest (i.e., the true plaintiff) is Mario Cavin and that Mario Sentelle Cavin, LLC is merely a nom de plume the purpose of which is not entirely clear. Accordingly, despite the reference in the complaint to Mario Sentelle Cavin, LLC, the Court interprets this action as being initiated solely by Mario Cavin, the individual, solely on behalf of Mario Cavin, the individual. Thus, any and all

references herein to "Plaintiff" refer to Mario Cavin, the individual, only. The following allegations are contained in Plaintiff's complaint.

In March 2011, Plaintiff was fired from his prison job "due to a misconduct." Several months later, Plaintiff requested to be placed on "indigent status" "due to not having any hygiene materials, and no foreseeable income in the near future." Plaintiff's request was denied by Defendant Anderson on the ground that, pursuant to Michigan Department of Corrections (MDOC) policy, Plaintiff was ineligible to be placed on indigent status because he was terminated from his job due to misconduct. Plaintiff asserts that Defendant Anderson, by denying his request for indigent status, violated his Eighth Amendment right to be free from cruel and unusual punishment.

On October 19, 2011, Plaintiff submitted to Defendant Hardiman "over 20-pages of legal exhibits" which he "needed copied for an upcoming pleading." On October 27, 2011, Defendants Hardiman and Walton confiscated Plaintiff's legal materials "due to it containing 'UCC related materials.'" Defendants confiscated the material in question without first conducting a hearing. Plaintiff asserts that Defendants violated his First Amendment right of access to the courts.

Plaintiff next asserts that the MDOC "has a policy and custom of providing female prisoners with additional privacy protections that male prisoners are not provided." Specifically, Plaintiff laments that male corrections officers are not permitted to "pat-down" female inmates, while male inmates are subject to "pat-down" searches by both male or female officers. With respect to this disparity, Plaintiff complains that "if Plaintiff becomes aroused during a pat-down by a female officer, he is subject to potential disciplinary action." Plaintiff also complains that while male officers are required to "announce their presence" before entering a female housing unit, female officers are not subject to a similar requirement when entering a male housing unit. Finally, Plaintiff complains that

because he is not allowed to "cover his cell windows," female officers "are routinely allowed to watch Plaintiff performing bodily functions in his cell." Plaintiff asserts that this circumstance violates his right to equal protection under the law.

Many of Plaintiff's claims have subsequently been dismissed. (Dkt. #5, 28, 32). The only claims remaining in this matter are Plaintiff's claim against Defendant Anderson that denial of his request to be placed in indigent status violated his Eighth Amendment rights and Plaintiff's Equal Protection claim against Defendant Heyns concerning the allegation that male prisoners are denied the same level of personal privacy as female prisoners. Defendants Heyns and Anderson now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.          Defendant Anderson

In March 2011, Plaintiff was fired from his prison job "due to a misconduct." Plaintiff later requested to be placed on "indigent status" "due to not having any hygiene materials, and no foreseeable income in the near future." Plaintiff's request was denied by Defendant Anderson on the ground that, pursuant to Michigan Department of Corrections (MDOC) policy, Plaintiff was ineligible to be placed on indigent status because he was terminated from his job due to misconduct. Plaintiff

asserts that Defendant Anderson, by denying his request for indigent status, violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

If the objective test is met, the Court must then determine whether the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the defendant deliberately indifferent to Plaintiff's health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that the defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and

'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

In support of her motion, Defendant Anderson has submitted an affidavit in which she asserts the following. (Dkt. #55). At all times relevant to this action, Anderson was employed as a Corrections Program Coordinator at the Brooks Correctional Facility (LRF). One of Anderson's duties in this regard was to review requests from prisoners for indigent status loans. Anderson reviewed Plaintiff's request for an indigent loan and denied such on August 15, 2011. Anderson denied Plaintiff's request because he had recently been fired from his food service job for having engaged in theft. Pursuant to MDOC Policy Directive 04.02.120, an inmate who is terminated from a job assignment as a result of being found guilty of a misconduct may not be placed on indigent status for a period of 12 months following such termination.

Prisoners who are not eligible for indigent status loans are nevertheless permitted to receive "care packages" which contains the following: (1) two small tubes of toothpaste; (2) a toothbrush; (3) a small bottle of shampoo; (4) a bar of soap; (5) a comb; (6) a razor; (6) a small can of shaving cream; and (7) a small stick of deodorant. Prisoners may also request additional soap as needed. After denying Plaintiff's August 15, 2011 request for an indigent status loan, Defendant Anderson had no further contact from or interaction with Plaintiff.

At his deposition, Plaintiff provided the following testimony, Plaintiff transferred from LRF in March 2012. (Dkt. #54, Exhibit A at 32). Following Defendant Anderson's denial of his indigent status loan, Plaintiff received a care package. (Dkt. #54, Exhibit A at 37-38). Between August 2011 and March 2012 Plaintiff received "three or four" care packages. (Dkt. #54, Exhibit A at 38). Plaintiff often traded away the items in his care packages. (Dkt. #54, Exhibit A at 40). Plaintiff never

went more than "a day or two" without hygiene items. (Dkt. #54, Exhibit A at 40-41). Defendant Anderson has also submitted evidence that during the relevant time period Plaintiff had money which he chose to spend on snack food items rather than hygiene items. (Dkt. #54, Exhibit D).

In response to the present motion Plaintiff has submitted an affidavit in which he asserts that he often went "days" without hygiene items and was compelled to borrow hygiene items from fellow prisoners. (Dkt. #60, Exhibit A). Plaintiff does not dispute that during the relevant time period he spent money on snack foods rather than hygiene products. Plaintiff asserts that during the relevant time period he received only three or four care packages. Plaintiff does not assert, however, that he ever made a request for a care package that was denied. Plaintiff has also submitted an affidavit executed by a fellow prisoner, Atiba Meriweather who asserts that he often loaned Plaintiff hygiene products. (Dkt. #60, Exhibit B).

Even viewing this evidence in a light most favorable to Plaintiff, it is clear that Defendant Anderson is entitled to summary judgment. The evidence reveals that Plaintiff, at most, went without certain hygiene products for periods of no more than a handful of days. Such minimal deprivation does not violate the Eighth Amendment. *See, e.g., See Richmond v. Settles*, 450 Fed. Appx. 448, 455 (6th Cir., Dec. 2, 2011) (deprivation of hygiene products for a "brief span of time. . ., i.e., only six days" does not violate the Eighth Amendment); *Griffin v. Womack*, 2013 WL 28669 at *4 (W.D. Ky., Jan. 2, 2013) ("deprivation of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of an Eighth Amendment violation"); *Dyer v. Hardwick*, 2011 WL 4036681 at *9 (E.D. Mich., Aug. 1, 2011) (same); *Dotson v. Stultz*, 2009 WL 2058820 at *8 n.7 (E.D. Tenn., July 6, 2009) ("[a]lthough the temporary deprivation of hygiene items is unpleasant, it does not violate the Eighth Amendment").

Moreover, to the extent Plaintiff went without hygiene products during the relevant time period, Plaintiff has presented no evidence that such can be attributed to Defendant Anderson or any other prison official. The record contains no evidence that Plaintiff was prevented from receiving additional care packages or that he was ever denied a requested care package. Furthermore, the record contains evidence that Plaintiff possessed sufficient funds to purchase hygiene products, but chose instead to purchase snack foods.

Furthermore, even if the deprivation Plaintiff suffered was sufficient to satisfy the objective element of the analysis, Plaintiff cannot establish that Defendant Anderson was actually aware that he was experiencing the deprivation in question. Defendant Anderson has presented evidence that she denied Plaintiff's request for an indigent status loan on August 15, 2011, after which she had no further contact from or interaction with Plaintiff, an assertion which Plaintiff does not refute. Plaintiff testified that after the denial of his request by Defendant Anderson he received a care package. Plaintiff has presented no evidence that he subsequently communicated to Defendant Anderson any deprivation of hygiene products he may have been experiencing. Thus, Plaintiff cannot demonstrate that Anderson was subjectively aware of any deprivation Plaintiff may have been experiencing and failed to act in response thereto. Accordingly, the undersigned recommends that Defendant Anderson's motion for summary judgment be granted.

## II.        Defendant Heyns

As noted above, Plaintiff's equal protection claim is premised upon alleged differences in the manner that prison officials treat male and female prisoners. Specifically, Plaintiff alleges that male corrections officers are not permitted to "pat-down" female inmates, while male inmates are

subject to "pat-down" searches by both male or female officers. Plaintiff also complains that while male officers are required to "announce their presence" before entering a female housing unit, female officers are not subject to a similar requirement when entering a male housing unit. Finally, Plaintiff complains that because he is not allowed to "cover his cell windows," female officers "are routinely allowed to watch Plaintiff performing bodily functions in his cell." Claims challenging policies such as these can take two forms: a facial challenge or an as-applied challenge. As the Court detailed previously, Plaintiff is asserting only a facial challenge to the aforementioned policies.[1] (Dkt. #28 at 11-12; Dkt. #32).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The level of scrutiny applied to challenged state action depends upon the interest or right impacted by such. When state action adversely impacts a "suspect class" such as race or national origin, or impacts a "fundamental right" such as speech or religious freedom, such action "will be sustained only if [it is] suitably tailored to serve a compelling state interest." *Hardy v. Cabrera*, 2008 WL 2743930 at *3 (W.D. Mich., July 10, 2008) (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985)). When state action impacts a "quasi-suspect class" such as gender, an intermediate level of scrutiny applies and the action will be upheld if is "substantially related to a sufficiently important government interest." *Cabrera*, 2008 WL 2743930 at *3 (quoting *City of Cleburne*, 473 U.S. at 440-41). All other challenged government actions are subject to the least scrutiny and will be upheld if such are merely "rationally related to a legitimate state interest." *Cabrera*, 2008 WL 2743930 at *3 (citations omitted).

---

[1] While Plaintiff asserts in his response to the present motion that he is asserting both a facial and an as-applied challenge to the policies in question, as the Court previously noted, Plaintiff has asserted in his complaint a facial challenge only and, moreover, has properly exhausted only a facial challenge to the policies in question. (Dkt. #28 at 11-12; Dkt. #32).

Plaintiff's allegations that (1) male corrections officers are not permitted to "pat-down" female inmates, while male inmates are subject to "pat-down" searches by both male or female officers and (2) male officers are required to "announce their presence" before entering a female housing unit, whereas female officers are not subject to a similar requirement when entering a male housing unit, concern alleged differences in the treatment of male and female prisoners. Accordingly, this particular policy is subject to intermediate scrutiny and will be upheld if it is "substantially related to a sufficiently important government interest."

The government has an almost obvious and important interest in not permitting male corrections officers to conduct pat-down searches of female inmates or enter a female housing unit without first announcing their presence. *See, e.g., Everson v. Michigan Department of Corrections*, 391 F.3d 737 (6th Cir. 2004) (detailing the sexual abuse perpetrated by male prison officials on female inmates prior to the introduction of the policies presently at issue). Plaintiff has failed to present evidence that similar concerns are presented by allowing female officers to pat-down male prisoners or enter male housing units unannounced. As the challenged distinctions are "substantially related to a sufficiently important government interest," Defendant is entitled to summary judgment as to these particular claims.

Finally, Plaintiff alleges that because he is not allowed to "cover his cell windows," female officers "are routinely allowed to watch Plaintiff performing bodily functions in his cell." When evaluating this claim, it must be remembered that Plaintiff is not asserting an as-applied challenge, but is instead asserting only a facial challenge to the alleged policy. Stated differently, Plaintiff is not asserting that he is entitled to relief because female prison officials have actually watched him

performing bodily functions in his cell, but is instead challenging the lawfulness of a policy that allegedly allows female corrections officers to engage in such conduct.

Defendant is entitled to relief as to this particular claim because such fails to state a claim on which relief may be granted. To state an equal protection claim, Plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff does not allege that other similarly situated prisoners (i.e., female prisoners) are accorded greater privacy in this regard. Thus, Plaintiff's claim must be dismissed for failure to state a claim on which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Heyns' and Anderson's Motion for Summary Judgment, (dkt. #53), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 8, 2013

  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge